Melinda Thomas, OSB #053962
Bryant, Lovlien & Jarvis, P.C.
P.O. Box 880
Bend, OR  97709
Phone:  (541) 382-4331
Fax:  (541) 389-3386
E-mail:  thomas@bljlawyers.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KIMBERLY LANNAGHAN, | Case No. _____ |
| Plaintiff, | |
| v. | |
| FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION, | **NOTICE OF REMOVAL** |
| Defendant. | |

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON AND TO PLAINTIFF:**

PLEASE TAKE NOTICE that DEFENDANT FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK NATIONAL ASSOCIATION ("FHHL"), by and through its undersigned counsel, BRYANT, LOVLIEN & JARVIS, P.C., hereby files its Notice of Removal under 28 U.S.C. § 1441 to effect removal of this matter which was commenced in the in the Circuit Court of the State of Oregon for the County of Deschutes, and designated Case No.

1 – Notice of Removal 15912-001 300

10CV0414MA.  FHHL states that removal is proper for the following reasons:

      1.     On or about May 17, 2010, Plaintiff filed this action in the Circuit Court of the State of Oregon for the County of Deschutes, which was designated Case No. 10CV0414MA.

      2.     FHHL first received notice of the Summons and Complaint on May 19, 2010, and thirty days have not yet passed since it first receiving notice.

      3.     The court has removal jurisdiction under 28 U.S.C. § 1441, because the subject matter of the action is within the original jurisdiction of the district court pursuant to 28 U.S.C. § 1332(a).  The parties are of diverse citizenship, as the Plaintiff is (and was at the time of the filing of the Complaint), a citizen of the State of Oregon, and First Horizon is (and was at the time of the filing of the Complaint) a national banking association with its main office located in the State of Tennessee.

      4.     The total amount in controversy on Plaintiff's claim, exclusive of interest and costs, is in excess of $75,000.00.

      5.     In accordance with 28 U.S.C. § 1446(a), attached hereto is a true and correct copy of all pleadings, processes, and orders filed in the Circuit Court of the State of Oregon for the County of Deschutes, under Case No. 10CV0414MA.

      6.     A copy of this Notice of Removal is being served on all parties of record by mailing, United States first-class, postage prepaid, a true and correct copy thereof to their attorneys of record or to unrepresented parties, and a copy of the original Notice of Removal will be filed with the Clerk of the Circuit Court of the State of Oregon for the County of Deschutes, pursuant to 28 U.S.C. § 1446(d).

2 – Notice of Removal 15912-001 300

WHEREFORE, Defendant FHHL prays that this civil action be removed to this Court

from the Circuit Court of the State of Oregon for the County of Deschutes.

Dated: June 17, 2010

BRYANT, LOVLIEN & JARVIS, P.C.,

*Melinda Thomas*

Melinda Thomas, OSB #053962

Lead Counsel:
Of Attorneys for Defendant
FIRST HORIZON HOME LOANS, A DIVISION
OF FIRST TENNESSEE BANK NATIONAL
ASSOCIATION

Out-of-State Counsel:
Brett L. Messinger
Duane, Morris, LLP
30 South 17th St.
Philadephia, PA  19103
Phone:  (215) 979-1508
E-mail:  blmessinger@duanemorris.com

3 – Notice of Removal 15912-001 300

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing NOTICE OF REMOVAL on:

Kevin Carolan
The Law Firm of Kevin Carolan, PC
P.O. Box 2221
Bend, OR 97709
Of Attorneys for Plaintiff

by the following indicated method or methods:

_____     by E-filing a full, true and correct copy thereof to the attorney at the electronic mail address reflected on the court's CM/ECF system, on the date set forth below.

____√____     by mailing a full, true and correct copy thereof in a sealed, first-class postage-paid envelope, and addressed to the attorneys/parties as shown above, the last-known office address of the attorneys/parties, and deposited with the United State Postal Service at Bend, Oregon on the date set forth below.

DATED this 17th day of June, 2010.

_____
Melinda Thomas (OSB #053962
Of Attorneys for Defendant

Page 1 - CERTIFICATE OF SERVICE - 15912-001 301

1

2          IN THE CIRCUIT COURT OF THE STATE OF OREGON

3                    FOR THE COUNTY OF DESCHUTES

4    KIMBERLY LANNAGHAN,              )
                                      )    Case No. _____
5                  Plaintiff,         )
                                      )
6         v.                          )    **AMENDED COMPLAINT**
                                      )
7    FIRST HORIZON HOME LOANS, A      )    **(Breach of Contract –**
     DIVISION OF FIRST TENNESSEE      )    **Fraud/Misrepresentation –**
8    BANK NATIONAL ASSOCIATION, an    )    **Conversion)**
     Oregon domestic corporation.     )
9                                     )
                   Defendant.         )    NOT SUBJECT TO MANDATORY
10                                    )    ARBITRATION

11

12                                1.

13        Kimberly Lannaghan ("Plaintiff"), has been a resident of Deschutes County, Oregon,

14   at all times relevant to this action.

15                                2.

16        At all times relevant to this action First Horizon Home Loans, a division of First

17   Tennessee Bank National Association ("Defendant") was a duly licensed business in the

18   State of Oregon, doing regular sustained business as First Horizon Home Loans, with a

19   business office in Bend, Deschutes County, Oregon. All acts alleged below occurred in

20   Deschutes County, Oregon.

21                        FIRST CAUSE OF ACTION

22                         **(Breach of Contract)**

23                                3.

24

25        Plaintiff realleges paragraphs 1 through 2.

26
     Page 1 of 6 – COMPLAINT

                                              The Law Firm of Kevin Carolan, PC
                                              PO Box 2221 Bend, OR 97709
                                              541.318.6059 – 541.388.4707(fax)

4.

On or about January 9th, 2008, Defendant and Plaintiff entered into and formed two

contracts with each other. Copies of these contracts are attached and incorporated into this

complaint as Exhibits A and B. The contracts stipulated that Defendant would lend Plaintiff

the funds necessary to purchase land and construct a residence. In consideration for the loans,

Plaintiff paid $113,569.02 to Defendant, $20,000 to the land owner, Mark Dickens, and

promised to repay to Defendant the principal amount of the loan, together with interest, over

a period of years.

5.

Prior to signing the contracts, Defendant promised Plaintiff that on her Interest-Only

Loan: 1) she would pay only interest, and no principle for ten years; 2) for the first year

Plaintiff's monthly payment would vary according to the prime interest rate; 3) after the first

year, and for the next ten years, Plaintiff's monthly payments would be calculated by using

the rate published in Defendant's Daily rate sheets for January 9, 2009 as the interest rate;

and 4) that she had already qualified for her loans and would not have to re-qualify.

6.

Plaintiff performed its contractual obligations, paying Defendant an additional

$56,707.51 in monthly payments throughout 2008 and 2009.

7.

Defendant materially breached the contract in two ways. First, Defendant illegally

shortened the length of the promised interest-only period on the Interest-Only Loan. Second,

Defendant breached the terms of the Interest-Only Loan by refusing to offer Plaintiff the

interest rate published in Defendant's Daily rate sheets for January 9, 2009. Instead,

Page 2 of 6 – COMPLAINT

1    Defendant insisted Plaintiff re-qualify for her loan. Plaintiff could not re-qualify for

2    additional financing, and Defendant foreclosed on and repossessed Plaintiff's home.

3                                            8.

4          Defendant's breach caused Plaintiff to lose her payments made in furtherance of

5    purchasing the property ($190,276.53); her home improvements and insurance payments

6    totaling $37,210; approximately $20,000 in home furnishings and storage of those

7    furnishing; $50,000 in rental income; and her superb financial credit rating. The value of

8    Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of

9    Defendant's breach.

10

11                                           9.

12         Defendant's breach entitles Plaintiff to rescission of the contracts, and relief for the

13   above referenced economic damages in the amount of $347,486.53; interest at the legal rate

14   until paid; and her reasonable attorney fees and costs.

15

16                             SECOND CAUSE OF ACTION

17                               (Fraud/Misrepresentation)

18

19                                          10.

20         Plaintiff realleges paragraphs 1 through 9.

21                                          11.

22         During contract formation in January of 2008, Defendant made fraudulent and

23   misleading statements to Plaintiff. First, Defendant stated that the interest rate on Plaintiff's

24   Interest-Only loan could be locked-in anytime during 2008, and that Defendant would

25   absolutely lock-in the rates by January 2009 at the latest. Second, Defendant promised

26

Page 3 of 6 – COMPLAINT

1    Plaintiff her Interest-Only Loan rate would be equal to prime. Third, Defendant promised

2    Plaintiff she would pay no principal and only interest on her Interest-Only Loan for ten (10)

3    years after her rate was locked in. Fourth, Defendant promised Plaintiff she would not have

4    to re-qualify for financing.

5                                          12.

6        The above statements constitute fraudulent misrepresentation because: 1) they were

7    false; 2) they were material to the contract; 3) Defendant knew the statements to be false or

8    was ignorant of their falsity; 4) Defendant  intended to induce Plaintiff to enter into the above

9    referenced contracts by making the statements; 5) Plaintiff was unaware the statements were

10   false; 6) Plaintiff relied on the truth of the statements; 7) Plaintiff had a right to rely on the

11   truth of the statements; 8) and as a result of the fraudulent statements Plaintiff lost her

12   payments made to purchase the property ($190,276.53); her home improvements and

13   insurance payments totaling $37,210; approximately $20,000 in home furnishings and

14   storage of those furnishings; $50,000 in rental income; her superb financial credit rating, and

15   suffered extreme inconvenience and emotional distress in the amount of $50,000.  The value

16   of Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of

17   Defendant's fraudulent misrepresentations.

18

19                                          13.

20       Defendant's breach entitles Plaintiff to rescission of the contracts, and all relief for

21   the above referenced economic damages in the amount of $347,486.53; non-economic

22   damages in the amount of $50,000; interest at the legal rate until paid; and her reasonable

23   attorney fees and costs.

24

25

26

Page 4 of 6 – COMPLAINT

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

1

2
THIRD CAUSE OF ACTION
3
(Conversion)
4

5
14.

6
Plaintiff realleges paragraphs 1 through 9.
7
15.
8
Defendant's conduct constitutes conversion in that Defendant unlawfully and
9
intentionally evicted Plaintiff from her home and sold the property at auction.
10
16.
11
As a result of Defendant's conversion of Plaintiff's home, Plaintiff lost her payments
12
made to purchase the property ($190,276.53); her home improvements and insurance
13
payments totaling $37,210; approximately $20,000 in home furnishings and storage of those
14
furnishings; $50,000 in rental income; her superb financial credit rating; and suffered
15
extreme inconvenience and emotional distress in the amount of $50,000.  The value of
16
Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of
17
Defendant's conduct.
18

19
17.
20
Defendant's conversion entitles Plaintiff to all relief for the above referenced
21
economic damages in the amount of $347,486.53; non-economic damages in the amount of
22
$50,000; interest at the legal rate until paid; and her costs.
23
//
24

25

26
Page 5 of 6 – COMPLAINT

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

**WHEREFORE**, Plaintiff prays for judgment in her favor and against defendant as follows:

1.    On her FIRST CLAIM FOR RELIEF against Defendant: rescission of the contracts; her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; interest at the legal rate until paid; and costs, disbursements and attorney fees pursuant to the contracts, ORS 20.096, and ORS 20.083.

2.    On her SECOND CLAIM FOR RELIEF against Defendant: rescission of the contracts; her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; her non-economic damages in the amount totaling $50,000; interest at the legal rate until paid; and costs, disbursements and attorney fees pursuant to the contracts, ORS 20.096, and ORS 20.083.

3.    On her THIRD CLAIM FOR RELIEF against Defendant: her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; her non-economic damages in the amount totaling $50,000; and interest at the legal rate until paid; costs and disbursements.

4.    Such other relief as the Court deems just, reasonable, and necessary.

DATED this _17th_ day of May, 2010.

/////

Kevin Carolan, OSB#: 05475
Attorney for Plaintiff
The Law Firm of Kevin Carolan, PC
PO Box 2221
Bend, OR 97709

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

0062610480

# INTEREST-ONLY PERIOD
# ADJUSTABLE RATE NOTE
### (One-Year Treasury Index - Rate Caps - 10 Yr. Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**January 9th, 2008**          **BEND**                    **OREGON**
      [Date]                      [City]                        [State]

**295 RIVERFRONT ST, BEND, Oregon 97701**

[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $          **1,000,000.00**  (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**FIRST HORIZON HOME LOANS, A DIVISION OF FIRST TENNESSEE BANK N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **7.125**      %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment on the first day of every month, beginning on   **March 1st, 2009**              . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on **February 1st, 2039**              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     **PO BOX 809**
                                        **MEMPHIS, TN 38101**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $          **5,937.50**   until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

**MULTISTATE INTEREST-ONLY PERIOD ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform Instrument**
Form 3534 10/04 (rev. 9/06)
Wolters Kluwer Financial Services
VMP®-178N (0609)
Page 1 of 5                              Initials: _____



PLAINTIFF'S
EXHIBIT

A



**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **FEBRUARY, 2014**                , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding  **TWO AND THREE-QUARTERS** percentage points (       **2.750**              %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than       **12.125**          % or less than       **2.750**           %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than       **12.125**       %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my

Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of Principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        5.00        % of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include; for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

0062610480

# RESIDENTIAL CONSTRUCTION LOAN
# ALLONGE TO NOTE

THIS ALLONGE is affixed to and incorporated into and shall be deemed to amend and supplement the Note ("Note"), of even date herewith, given by the undersigned Borrower ("Borrower" whether one or more) to evidence Borrower's indebtedness to the Note Holder, which indebtedness is secured by that certain Mortgage/Deed of Trust ("Security Instrument"), of even date herewith, covering the premises described in the Security Instrument. If the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association buys all or some of the Note Holder's rights under the Security Instrument and Note, the promises and agreements in this Allonge will no longer have any force or effect (except as may be required for lien validity and/or Note enforcement). Notwithstanding anything to the contrary set forth in the Note, Borrower hereby agrees to the following:

1.    **CONSTRUCTION/PERMANENT LOAN**
      This Note, as amended, represents both a construction/home improvement loan and a permanent mortgage loan. During the Construction Period of the loan the Note Holder will periodically advance principal amounts of the Note for the construction of certain improvements ("Improvements") in accordance with one or more Construction Loan Agreement(s)/Residential Construction Loan Agreement(s) (jointly and severally "Agreement"). The "Construction Period" is defined as the period extending from the date of the Note to and including ____1/08/2009____ . On the day after the Construction Period ends, the loan evidenced by this Note will be a permanent mortgage loan ("Permanent Mortgage Date"). Beginning on the Permanent Mortgage Date, interest shall accrue as stated in the Note or Modification Agreement, as applicable, and monthly payments of principal and interest shall be due and payable as set forth in the Note or Modification Agreement, subject to subsection 2.(B) or 2.(C) hereof, as applicable.

2.    **INTEREST**
      (A)    **Interest During the Construction Period**
             ☐ Borrower will pay interest only, based on a 360-day year, on the amount advanced by the Note Holder at the locked rate of __N/A__ % during the Construction Period of the loan.

             ☒ Borrower will pay interest only, based on a 360-day year, on the amount advanced by the Note Holder at the rate of prime + __-0.5__ % during the Construction Period of the loan, as such interest rate exists daily ("Construction Rate"). The Construction Rate interest will be calculated daily on the amount advanced and the Construction Rate will change as and when prime changes. Prime is defined as that rate published as the U.S. Prime Rate in the Money Rates Section of *The Wall Street Journal* from time to time. If more than one U.S. Prime Rate is published in *The Wall Street Journal*, the highest published U.S. Prime Rate will apply. Should the U.S. Prime Rate cease to be published in *The Wall Street Journal*, Note Holder has the right to choose another index substantially similar to the U.S. Prime Rate on which to rely. The maximum interest rate under this subsection (A) will not exceed 18%, or the state usury ceiling, whichever is less.

             Borrower will make monthly interest payments by the 15th of each month for the amount billed by the Note Holder. Note Holder will impose a late charge for any payment not received by the due date. The amount of the late charge will be __5.00__% of the outstanding payment. In the event that the construction of the Improvements has not been substantially completed during the Construction Period of the loan, the Note Holder may require an extension of the Construction Period and a rescheduling of the Note, if deemed necessary for completion of the Improvements securing the lien or may at its option, upon providing such notices as required by law, require immediate payment of all funds secured by the Security Instrument.

      ☐(B)    **Interest Paid on the Permanent Loan (Locked Rate)**
             Beginning on the Permanent Mortgage Date, interest shall be paid at the rate stated in the Note provided the locked interest rate has not expired. Principal and interest payments shall also be due and payable as set forth in the Note. If the locked interest rate has expired during the Construction Period or prior to the Permanent Mortgage Date, Note Holder, at Note Holder's discretion, shall establish the interest rate on the Note at the Note Holder's prevailing rate for mortgage loans with terms and conditions comparable to those contained in the Note as published in Note Holder's Daily rate sheets for the first business day after the date the locked interest rate has expired, and Borrower agrees to execute a Modification Agreement to establish such changed permanent interest rate at that time. Failure to execute the Modification Agreement shall constitute default under the Note.

      ☒(C)    **Interest Paid on the Permanent Loan (Non-locked Rate)**
             At least fifteen (15) days prior to the Permanent Mortgage Date, Borrower must notify Note Holder to establish the interest rate on the Note at the Note Holder's prevailing rate for mortgage loans with terms and conditions comparable to those contained in the Note as published in Note Holder's Daily rate sheets for the first business day after the date the Note Holder actually receives the notice. If Borrower fails to notify Note Holder or timely notify Note Holder, as aforesaid, then Note Holder, at Note Holder's discretion, shall establish the interest rate on the Note in accordance with this paragraph based on Note Holder's Daily rate sheets published for the first business day after the notice period ends. Borrower agrees to execute a Modification Agreement to establish such changed permanent interest rate at that time. Failure to execute such Modification Agreement shall constitute default under the Note. The maximum interest rate under this subsection (C) will not exceed 18%, or the state usury ceiling, whichever is less.

0062610480

**3.    ADVANCES**

To the extent not prohibited by applicable law, until the Improvements are completed, any amount of principal not advanced prior to the end of the Construction Period may, in the sole discretion of Note Holder, be funded into an escrow account or into a pledged account with the Note Holder or its designated escrow agent, and advances may be made out of such escrow or pledged account for completion of the Improvements after the Construction Period. Alternatively, Note Holder may require immediate payment of the Note or an extension of the Construction Period and a rescheduling of the Note, if deemed necessary for completion of the Improvements. Any portion of a payment received in excess of interest due or any funds not advanced under the Agreement may at the option of the Note Holder be used to pay costs associated with the construction of the Improvements or may be credited against the principal amount of the Note.

**4.    EXTENSIONS**

Failure to complete construction of the Improvements as described in the Agreement by the Permanent Mortgage Date shall constitute an event of default hereunder, under the Security Instrument, and under the Agreement. Note Holder in its sole discretion may elect to extend the Construction Period and Permanent Mortgage Date to a date not more than ninety (90) days in the future to facilitate the completion of construction of the Improvements. Permanent Mortgage Date shall mean the initial Permanent Mortgage Date or any extension thereof. Lender may, in its sole discretion, grant such extension upon Borrower's payment of an extension fee in an amount equal to one-half of one percent (1/2 of 1%) of the original principal amount stated in the Note plus all costs associated with the extension. Extensions beyond ninety (90) days are at the sole discretion of Note Holder.

**5.    EVENTS OF DEFAULT AND ACCELERATION OF THE DEBT**

Note Holder, upon providing such notices as required by law and the Loan Documents, may declare the entire unpaid principal balance and accrued interest then owed under the Note, as amended by this Allonge, immediately due and payable ("Acceleration") if any payment of interest is not made when due during the Construction Period or if default should occur under any covenant, condition or agreement contained in the Loan Documents. The definition of Loan Documents includes (but is not limited to) the Note, as amended by this Allonge, the Security Instrument and the Agreement. In case of Acceleration of the Note, interest shall accrue at an interest rate of 5% above the then prevailing market rate for that particular loan program which the loan terms are based upon, not to exceed the highest lawful rate permitted by whichever applicable United States federal or State law that permits the highest interest rate, until the Note is paid in full or is reinstated or renewed and extended.

**6.    CONFLICTS**

If any term or provision of this Allonge shall be in conflict with any term or provision of the Note, the term or provision of this Allonge shall control. This Allonge shall be interpreted under the laws of the State of __ Oregon _____. Any provisions of this Allonge adjudged to be invalid shall be deemed amended from it, with the remainder of the provisions to be in full force and effect. Any remedies or rights of Note Holder expressed in this Allonge are cumulative of, and not exclusive of, any other remedies and rights of Note Holder under the Loan Documents and applicable state law. Except as amended or supplemented hereby, the terms and provisions of the Note shall remain unchanged and in full force and effect.

**7.    TERMINATION**

After the advance of all Note funds necessary to complete the Improvements, completion of the Improvements, and the satisfaction of all conditions described in the Agreement, this Allonge will be null and void and no longer in effect (except as may be required for lien validity and/or Note enforcement), and any unadvanced Note funds will be credited to the principal balance of the Note.

**8.    MODIFICATION OF THE LOAN**

Should the application of any provision of this Allonge change any of the Note terms, Borrower agrees to execute a Modification Agreement which shall be in form and content as Note Holder shall reasonably require causing the interest rate or other terms of the Note to be changed in accordance with the provisions set forth above. Failure to execute such Modification Agreement shall constitute default under the Note.

**9.    NOTICE OF NO ORAL AGREEMENT**

The Loan Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

In acceptance and agreement to the terms and covenants contained in this Allonge, Borrower has executed same on this _____ day of _____.


_____          _____
(Borrower)    KIMBERLY LANNAGHAN                    (Borrower)


_____          _____
(Borrower)                                          (Borrower)

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
KIMBERLY LANNAGHAN                        -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                         -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                         -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                         -Borrower                                         -Borrower


*[Sign Original Only]*

0062610563

## BALLOON NOTE
### (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| **January 9th, 2008** | **BEND** | **OREGON** |
|---|---|---|
| Date | City | State |

**295 RIVERFRONT ST., BEND, OR 97701**
                         Property Address

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $    **199,683.00**    (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
**FIRST HORIZON HOME LOANS A DIVISION OF FIRST TENNESSEE BANK N.A.**
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST
I will pay interest at a yearly rate of     **8.375**      %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS
**(A) Time and Place of Payments**
I will pay principal and interest by making payments each month of U.S. $         **1,517.74**
I will make my payments on the  **1st**     day of each month beginning on **March 1st, 2009**
I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **February 1st, 2024**
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at  **PO BOX 31**
**MEMPHIS, TN 38101**              or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $    **1,517.74**       , with a balloon payment of
$       **156,794.73** .

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any of my monthly payments by the end of     **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.00**    % of my overdue payment, but not less than U.S. $      **N/A**      and not more than U.S. $    **N/A**    . I will pay this late charge only once on any late payment.
**(B) Notice from the Note Holder**
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
**(C) Default**
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

OR 2nd Balloon Note
FH6D11C                         Page 1 of 3

**PLAINTIFF'S EXHIBIT**
B

Initial:_____
9/03

**(D) Payment of Note Holder's Cost and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**5. THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated **January 9th, 2008**                         , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.

**6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only a part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.

I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

**7. BORROWER'S WAIVERS**

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

**8. GIVING OF NOTICES**

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

**9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

0062610563

OR 2nd Balloon Note
FH6D11D

Page 2 of 3

Initial:_____
9/03

**NOTICE TO THE BORROWER**
**Do not sign this Note before you read it.**
**This Note authorizes the Lender to refuse to accept partial prepayment of**
**the loan prior to the date provided for monthly payments in the Note.**

_____ (Seal)           _____ (Seal)
KIMBERLY  LANNAGHAN          -Borrower                                                -Borrower

_____ (Seal)           _____ (Seal)
                             -Borrower                                                -Borrower

_____ (Seal)           _____ (Seal)
                             -Borrower                                                -Borrower

_____ (Seal)           _____ (Seal)
                             -Borrower                                                -Borrower
                                                                        (Sign Original Only)

0062610563

OR 2ⁿᵈ Balloon Note                          Page 3 of 3                          9/03
FH6D11E

1

2       IN THE CIRCUIT COURT OF THE STATE OF OREGON

3              FOR THE COUNTY OF DESCHUTES

4    KIMBERLY LANNAGHAN,            )
                                    )       Case No. _____
5                   Plaintiff,      )
                                    )
6    v.                             )       **COMPLAINT**
                                    )
7    FIRST HORIZON HOME LOANS, A    )       **(Breach of Contract –**
     DIVISION OF FIRST TENNESSEE    )       **Fraud/Misrepresentation –**
8    BANK NATIONAL ASSOCIATION, an  )       **Conversion)**
     Oregon domestic corporation.   )
9                                    )
                    Defendant.       )       NOT SUBJECT TO MANDATORY
10                                   )       ARBITRATION

11

12                              1.

13          Kimberly Lannaghan ("Plaintiff"), has been a resident of Deschutes County, Oregon,

14   at all times relevant to this action.

15                              2.

16          At all times relevant to this action First Horizon Home Loans, a division of First

17   Tennessee Bank National Association ("Defendant") was a duly licensed business in the

18   State of Oregon, doing regular sustained business as First Horizon Home Loans, with a

19   business office in Bend, Deschutes County, Oregon. All acts alleged below occurred in

20   Deschutes County, Oregon.

21                      FIRST CAUSE OF ACTION

22                        **(Breach of Contract)**

23                              3.

24          Plaintiff realleges paragraphs 1 through 2.

25

26

Page 1 of 6 – COMPLAINT

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

4.

On or about January 9th, 2008, Defendant and Plaintiff entered into and formed two contracts with each other. Copies of these contracts are attached and incorporated into this complaint as Exhibits A and B. The contracts stipulated that Defendant would lend Plaintiff the funds necessary to purchase land and construct a residence. In consideration for the loans, Plaintiff paid $113,569.02 to Defendant, $20,000 to the land owner, Mark Dickens, and promised to repay to Defendant the principal amount of the loan, together with interest, over a period of years.

5.

Prior to signing the contracts, Defendant promised Plaintiff that on her Interest-Only Loan: 1) she would pay only interest, and no principle for ten years; 2) for the first year Plaintiff's monthly payment would vary according to the prime interest rate; 3) after the first year, and for the next ten years, Plaintiff's monthly payments would be calculated by using the rate published in Defendant's Daily rate sheets for January 9, 2009 as the interest rate; and 4) that she had already qualified for her loans and would not have to re-qualify.

6.

Plaintiff performed its contractual obligations, paying Defendant an additional $56,707.51 in monthly payments throughout 2008 and 2009.

7.

Defendant materially breached the contract in two ways. First, Defendant illegally shortened the length of the promised interest-only period on the Interest-Only Loan. Second, Defendant breached the terms of the Interest-Only Loan by refusing to offer Plaintiff the interest rate published in Defendant's Daily rate sheets for January 9, 2009. Instead,

Page 2 of 6 – COMPLAINT

1  Defendant insisted Plaintiff re-qualify for her loan. Plaintiff could not re-qualify for

2  additional financing, and Defendant foreclosed on and repossessed Plaintiff's home.

3                                          8.

4        Defendant's breach caused Plaintiff to lose her payments made in furtherance of

5  purchasing the property ($190,276.53); her home improvements and insurance payments

6  totaling $37,210; approximately $20,000 in home furnishings and storage of those

7  furnishing; $50,000 in rental income; and her superb financial credit rating. The value of

8  Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of

9

10  Defendant's breach.

11                                         9.

12        Defendant's breach entitles Plaintiff to rescission of the contracts, and relief for the

13  above referenced economic damages in the amount of $347,486.53; interest at the legal rate

14  until paid; and her reasonable attorney fees and costs.

15

16                           SECOND CAUSE OF ACTION

17                             (Fraud/Misrepresentation)

18

19                                        10.

20        Plaintiff realleges paragraphs 1 through 9.

21                                        11.

22

23        During contract formation in January of 2008, Defendant made fraudulent and

24  misleading statements to Plaintiff. First, Defendant stated that the interest rate on Plaintiff's

25  Interest-Only loan could be locked-in anytime during 2008, and that Defendant would

26  absolutely lock-in the rates by January 2009 at the latest. Second, Defendant promised

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

1    Plaintiff her Interest-Only Loan rate would be equal to prime. Third, Defendant promised

2    Plaintiff she would pay no principal and only interest on her Interest-Only Loan for ten (10)

3    years after her rate was locked in. Fourth, Defendant promised Plaintiff she would not have

4    to re-qualify for financing.

5                                                    12.

6          The above statements constitute fraudulent misrepresentation because: 1) they were

7    false; 2) they were material to the contract; 3) Defendant knew the statements to be false or

8    was ignorant of their falsity; 4) Defendant  intended to induce Plaintiff to enter into the above

9    referenced contracts by making the statements; 5) Plaintiff was unaware the statements were

10   false; 6) Plaintiff relied on the truth of the statements; 7) Plaintiff had a right to rely on the

11   truth of the statements; 8) and as a result of the fraudulent statements Plaintiff lost her

12   payments made to purchase the property ($190,276.53); her home improvements and

13   insurance payments totaling $37,210; approximately $20,000 in home furnishings and

14   storage of those furnishings; $50,000 in rental income; her superb financial credit rating, and

15   suffered extreme inconvenience and emotional distress in the amount of $50,000.  The value

16   of Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of

17   Defendant's fraudulent misrepresentations.

18

19

20                                                  13.

21         Defendant's breach entitles Plaintiff to rescission of the contracts, and all relief for

22   the above referenced economic damages in the amount of $347,486.53; non-economic

23   damages in the amount of $50,000; interest at the legal rate until paid; and her reasonable

24   attorney fees and costs.

25

26

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

## THIRD CAUSE OF ACTION

### (Conversion)

14.

Plaintiff realleges paragraphs 1 through 9.

15.

Defendant's conduct constitutes conversion in that Defendant unlawfully and intentionally evicted Plaintiff from her home and sold the property at auction.

16.

As a result of Defendant's conversion of Plaintiff's home, Plaintiff lost her payments made to purchase the property ($190,276.53); her home improvements and insurance payments totaling $37,210; approximately $20,000 in home furnishings and storage of her furnishings; $50,000 in rental income; her superb financial credit rating; and suffered extreme inconvenience and emotional distress in the amount of $50,000. The value of Plaintiff's credit was approximately $50,000. These damages were a foreseeable result of Defendant's conduct.

17.

Defendant's conversion entitles Plaintiff to all relief for the above referenced economic damages in the amount of $347,486.53; non-economic damages in the amount of $50,000; interest at the legal rate until paid; and her costs.

//

Page 5 of 6 – COMPLAINT

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)

**WHEREFORE**, Plaintiff prays for judgment in her favor and against defendant as follows:

1.    On her FIRST CLAIM FOR RELIEF against Defendant: rescission of the contracts; her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; interest at the legal rate until paid; and costs, disbursements and attorney fees pursuant to the contracts, ORS 20.096, and ORS 20.083.

2.    On her SECOND CLAIM FOR RELIEF against Defendant: rescission of the contracts; her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; her non-economic damages in the amount totaling $50,000; interest at the legal rate until paid; and costs, disbursements and attorney fees pursuant to the contracts, ORS 20.096, and ORS 20.083.

3.    On her THIRD CLAIM FOR RELIEF against Defendant: her economic damages in the amount totaling $347,486.53 or such sum as may be proven at trial; her non-economic damages in the amount totaling $50,000; and interest at the legal rate until paid; costs and disbursements.

4.    Such other relief as the Court deems just, reasonable, and necessary.

DATED this _13th_ day of May, 2010.

/////

Kevin Carolan, OSB#: 05475
Attorney for Plaintiff
The Law Firm of Kevin Carolan, PC
PO Box 2221
Bend, OR 97709

The Law Firm of Kevin Carolan, PC
PO Box 2221 Bend, OR 97709
541.318.6059 – 541.388.4707(fax)