FILED 27 JUL '11 15:41 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Kimberly Lannaghan,                          Civ. No. 10-6156-AA
                                             OPINION AND ORDER
            Plaintiff,

      v.

First Horizon Home Loans,
a division of First
Tennessee Bank National
Association,

            Defendant,

      v.

Todd Stager,

            Third-Party
            Defendant.

_____

Kevin Carolan
The Firm of Kevin Carolan, PC
P.O. Box 2221
Bend, Oregon 97709
      Attorney for plaintiff

Melinda Thomas
Bryant Lovlien & Jarvis PC


Page 1 - OPINION AND ORDER

P.O. Box 880
Bend, Oregon 97709

Brett L. Messinger
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103
        Attorneys for defendant

AIKEN, Chief Judge:

    Defendant First Horizon Bank moves for summary judgment on
plaintiff Kimberly Lannaghan's claims.  See Fed. R. Civ. P. 56.
For the reasons set forth below, defendant's motion is granted
and plaintiff's claims are dismissed.

## BACKGROUND

    In January 2008, plaintiff sought financing from defendant
to purchase land and construct a home in Bend, Oregon (the
"project").  The amount required to complete the project was
$1,338,683.  Defendant agreed to lend plaintiff $1,119,683 to
partially fund the project; in exchange, plaintiff promised to
repay defendant the principal amount of the loan, with interest,
over a period of years.

    Plaintiff entered into two loan contracts to secure
financing.  The type of loan she received from defendant was a
One Time Close ("OTC") loan.  Under the OTC loan, plaintiff was
only required to pay interest on amounts disbursed during the
project's construction period.  Plaintiff's loan documents
stipulated that after January 2009, when the construction period
ended, plaintiff's construction loan would be converted into a

Page 2 - OPINION AND ORDER

permanent mortgage loan, under which both interest and principal became due.

Plaintiff had a choice regarding how her interest rate would be calculated when her loan was converted from a construction loan into permanent financing. She could either choose to "lock in" her interest rate by notifying the defendant within the period specified in the loan contract or choose to let defendant set the rate "comparable" to those published in its Daily Rate sheets. The Daily Rate sheets reflected the current market value of such loans.

In April 2008, defendant ceased offering OTC loans, and as a result, stopped publishing the accompanying Daily Rate sheets. Defendant notified plaintiff of the discontinuation of her loan product prior to the conclusion of the project's construction period.

In January 2009, because the Daily Rate sheets no longer existed, defendant offered plaintiff alternative rates to convert her loan into permanent financing. The last offer made by defendant was for an interest rate of 6.625% on the note secured by the first deed of trust and 7.625% on the note secured by the second deed of trust. Plaintiff indicated that these rates were acceptable; however, plaintiff failed to execute a loan modification agreement. Construing plaintiff's actions as default under the loan, defendant foreclosed on the project.

Subsequently, plaintiff filed this action, alleging that
defendant breached its contracts with her when, in 2009, it
refused to offer plaintiff the interest rate published in
defendant's Daily Rate sheets.  Plaintiff also asserts claims for
fraud, conversion, unconscionability, and void for vagueness.  As
relief, plaintiff seeks nearly $400,000 in damages and rescission
of the loan contracts.  Defendant filed a counterclaim, alleging
that plaintiff fraudulently misrepresented her income on her loan
application and her intended use of the property.  Defendant now
moves for summary judgment pursuant to Fed. R. Civ. P. 56 on
plaintiff's claims.

## STANDARD

Summary judgment is appropriate "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(a).  Substantive law on an issue determines the materiality of
a fact. T.W. Electrical Serv., Inc. v. Pacific Electrical
Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987).  Whether
the evidence is such that a reasonable jury could return a
verdict for the nonmoving party determined the authenticity of a
dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
(1986).

The moving party has the burden of establishing the absence
of a genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  If the moving party shows the absence
of a genuine issue of material fact, the nonmoving party must go
beyond the pleadings and identify facts which show a genuine
issue for trial.  Id. at 324.

Special rules of construction apply when evaluating summary
judgment motion: (1) all reasonable doubts as to the existence of
genuine issues of material fact should be resolved against the
moving party; and (2) all inferences to be drawn from the
underlying facts must be viewed in the light most favorable to
the nonmoving party.  T.W. Electrical, 809 F.2d at 630.

**DISCUSSION**

Plaintiff "does not oppose" defendant's motion against her
fraud, unconscionabilty, and void for vagueness claims;
accordingly, these claims are dismissed.  Therefore, the claims
remaining for resolution by this Court are breach of contract and
conversion.

I.  Preliminary Matter

To support its motion for summary judgment and its
evidentiary objection pursuant to LR 56(b), defendant requests
that this Court take judicial notice of 1) a deed of trust,
executed by Steven and Donni Davidson, filed in the Deschutes
County Clerk's office on December 27, 2006; and 2) a loan

Page 5 - OPINION AND ORDER

modification agreement, executed by Steven and Donni Davidson, filed in the Deschutes County Clerk's office on December 26, 2007.

Judicial notice may be taken at any stage in the proceeding. Fed. R. Evid. 201(f). A judicially noticed fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The facts contained in the documents are undisputed and capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, as they are part of the public record. Further, plaintiff does not oppose defendant's request for judicial notice. As such, defendant's request for judicial notice is granted.

II. Breach of Contract

Plaintiff alleges that defendant's failure to offer her the interest rate published in the Daily Rate sheets constitutes a material breach of the parties' contracts, entitling plaintiff to rescission of those contracts and damages.

Defendant contends that its discontinuation of the Daily Rate sheets was not a material breach. Rather, defendant argues that the loan documents only required it to offer plaintiff rates

Page 6 - OPINION AND ORDER

consistent with, but not identical to, the prevailing market
rate.  Defendant submits expert evidence establishing that the
rates it offered plaintiff were below the prevailing market rate.
Because this evidence establishes that plaintiff did not suffer
any harm or damages as a result of defendant's failure to
continue publishing Daily Rate sheets, defendant asserts that
plaintiff has failed to make out her prima facie case.

     To state a prima facie claim for breach of contract,
plaintiff must allege the existence of a contract, its relevant
terms, plaintiff's full performance and lack of breach and
defendant's breach resulting in damage to plaintiff.  NW Natural
Gas Co. V. Chase Gardens, Inc., 333 Or. 304, 312-13 & n.3, 39
P.3d 846 (2002).  The non-breaching party's performance will be
excused, and the contract rescinded, only if the breach was
material.  Wasserburger v. Am. Sci. Chem., Inc., 267 Or. 77, 82,
514 P.2d 1097 (1973).  A breach is material if there is "some
substantial particular, which goes to the essence of the
contract, and renders the defaulting party incapable of
performance, or makes it impossible for him to carry out the
contract as intended."  Reynolds v. Janzen, 232 Or. 548, 549, 376
P.2d 415 (1962).  Whether a breach of a contract is material is a
question of fact.  Wasserburger, 267 Or. at 82.

     The interpretation of a contract provision, however, is a
question of law to be determined by the court.  Yogman v. Parrott,
325 Or. 358, 361, 937 P.2d 1019 (1997). In interpreting a

Page 7 - OPINION AND ORDER

contract, the court employs a three-step analysis. <u>Id.</u>  First,
"the court examines the text of the disputed provision, in the
context of the document as a whole." <u>Id.</u>  If the provision is
clear and unambiguous, the analysis ends, and "the court
construes the words of a contract as a matter of law." <u>Eagle</u>
<u>Industries, Inc. v. Thompson</u>, 321 Or. 398, 405, 900 P.2d 475
(1995)(citations omitted).  A term or provision of a contract is
ambiguous if it can reasonably be given more than one meaning.
<u>Pacific First Bank v. New Morgan Park Corp.</u>, 319 Or. 342, 347-8,
876 P.2d 761 (1994).

A.  <u>Contractual Terms</u>

Here, the contract at issue states in relevant part

> At least fifteen (15) days prior to the [end of the
> construction period], [plaintiff] must notify [defendant] to
> establish the interest rate on the Note at the [defendant's]
> *prevailing rate for mortgage loans with terms and conditions
> comparable to those contained in . . . Daily rate sheets* . .
> . If [plaintiff] fails to notify [defendant] . . . then
> [defendant], *at [defendant's] discretion*, shall establish
> the interest rate on the Note *in accordance with this
> paragraph based in [defendant's] Daily rate sheets* . . .
> [plaintiff] agrees to execute a Modification Agreement to
> establish such changed permanent interest rate at that time.
> Failure to execute such Modification Agreement shall
> constitute default under the Note.

Allonge to Notes, Ex. A to Plf.'s Response (emphasis added).

I find that, while the provision at issue may be poorly
drafted, its meaning is clear.  The express terms of the contract
require that the rates offered to plaintiff at the time of
conversion be "based" upon and "comparable" to the Daily Rate
sheets.  It is undisputed that the Daily Rate sheets merely

Page 8 - OPINION AND ORDER

reflected the prevailing market rate for similar loan products;
thus, the contract necessitated only that defendant offer
plaintiff interest rates that were compatible with, but not
identical to, the prevailing market rates.  Moreover, I find that
the contract unambiguously provides defendant some discretion in
determining those rates.

Accordingly, the fact that defendant ceased producing the
Daily Rate sheets does not, in and of itself, establish a
material breach.  The question instead is whether the interest
rates that defendant ultimately offered were so high that the
discrepancy between those rates and the prevailing market rates
went to the "essence of the contract," such that plaintiff's
performance should be excused.  Reynolds, 232 Or. at 549.

B.  The Prevailing Market Rate

Because the issue of whether the interest rates offered by
defendant were commensurate with the prevailing market rates is a
question of fact, defendant can only prevail on its motion for
summary judgment if (1) it first shows the absence of any
material fact; and (2) plaintiff thereafter fails to "present
specific facts which show that there is a genuine issue for
trial."  Kinyon v. Fred Meyer Stores, Inc., 2004 WL 2303595, *5
(D.Or. Oct. 12, 2004); see also Celotex, 477 U.S. at 322-24.

I.  Defendant's Evidence

To establish the prevailing market rate, defendant seeks to introduce evidence from expert Don Coker.  Expert testimony is admissible when scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue.  Fed. R. Evid. 702.   Additionally, the court is required to ensure the reliability and relevancy of all expert testimony before admitting it.  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) (scientific testimony is admissible only if it is both relevant and reliable); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 146 (1999) (court's "gatekeeping" function applies to all forms of expert testimony).

Daubert outlined nonexclusive factors to assist a court in determining the reliability of expert evidence.  Daubert, 509 U.S. at 593-94.  The Daubert test, however, is "flexible" and the "list of specific factors neither necessarily nor exclusively applies to all experts or in every case.  Rather, the law grants a district court . . . broad latitude when it decides how to determine reliability."  Kumho, 526 U.S. at 141; see also Elsayed Mukhtar v. Cal. St. Univ., Hayward, 299 F.3d 1053, 1064 (9th Cir. 2002) (court "has broad latitude in determining whether an expert's testimony is reliable" and "in deciding how to determine the testimony's reliability"), as amended by 319 F.3d 1073 (9th Cir. 2003).

Thus, under <u>Daubert</u> and <u>Kumho</u>, Mr. Coker's testimony regarding the prevailing market rate is admissible only if this Court first determines that he is a qualified expert and that his testimony is reliable, relevant and will assist the trier of fact. Here, Mr. Coker testified that:

> [i]t is stated on page 117 of Ms. Lannaghan's deposition that in July of 2009, First Horizon's Bob Hupfer offered to Ms. Lannaghan an interest rate of 6.625% on her first mortgage and an interest rate of 7.625% on her second mortgage. The closest historical rates that I could find to July 2009 were interest rates cited by MonitorBankRates.com for the week of June 1, 2009; and those rates were 6.65% for a 10/1 Jumbo Arm, and 7.65% for a 10-year home equity second mortgage. Therefore, the interest rates offered to Ms. Lannaghan by First Horizon were slightly better than the quoted market rates that I found for the same time period.

Report of Mr. Coker, Ex. C at pg. 5 to Def.'s Mot. for Summ. J.

After reviewing Mr. Coker's report and credentials, I find Mr. Coker is qualified as an expert. Moreover, I find that his testimony is reliable, highly relevant and helpful to the trier of fact. <u>Daubert</u>, 509 U.S. at 593-94; <u>Kumho</u>, 526 U.S. at 141. Therefore, defendant's expert evidence is admissible for the purposes of establishing the prevailing market rate during the relevant time period.

Because the expert evidence establishes that the interest rate ultimately offered to plaintiff was below fair market value, I find that defendant adequately supported its motion for summary judgment. Therefore, the burden shifts to plaintiff to identify specific facts that show a genuine issue remaining for trial. <u>Celotex</u>, 477 U.S. at 324.

Page 11 - OPINION AND ORDER

ii.  Plaintiff's Evidence

Plaintiff has attempted to create an issue of material fact through her own testimony and an affidavit from former bank employee Steven Davidson.  Defendant asserts that neither plaintiff's nor Mr. Davidson's testimony is admissible.  Def.'s Mot. for Summ. J. at pg. 19; Def.'s Reply at pg. 6.  It is undisputed that both plaintiff and Mr. Davidson are not experts. Plf.'s Response at pg. 6.

Lay witness testimony is admissible so long as it provides opinion testimony that is "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701; see also Fireman's Fund Ins. Cos. v. Alaskan Pride P'ship, 106 F.3d 1465, 1468 & n. 3 (9th Cir. 1997) (discussing Fed. R. Evid. 701). Testimony is not "helpful" if it is nothing more than an opinion as to how an issue should be decided by the trier of fact. Fireman's Fund, 106 F.3d at 1468.  Further, to the extent that lay witness' opinion is based on something other than the witness' personal observations, "it must be excluded under Federal Rules of Evidence 701(a)."  Kinyon, 2004 WL 2303595 at *6.

### a.  Plaintiff's Deposition Evidence

Plaintiff's testimony is inadmissible to establish that defendant materially breached the parties' contract.  During her deposition, plaintiff testified that "the rate that I was being offered was not the rate on the rate sheet." Lannaghan Depo., Ex. A at pg. 28-9 to Def.'s Mot. for Summ. J.  Plaintiff could not specifically identify the information on which she based her opinion; plaintiff merely stated, when prompted, that "we were watching the interest rates, and I believe the rates that they were offering me were higher than the [prevailing market] rates that were out at that time."  Id. at 29.  When asked what rate plaintiff thought she should be have been offered to convert her loan into permanent financing, she stated, "the rate that was discussed with the representative that I met with from First Horizon [in early 2008, prior to entering into the loan contracts]," which was "six percent."  Id.

Plaintiff's testimony merely establishes that in 2008, around the time she entered into the loan contracts, an agent of defendant's suggested that the prevailing market rate was 6%. Plaintiff's testimony, however, fails to establish what the rate offered should have been or whether the rate ultimately offered was different from those existing in the marketplace in January 2009.

As such, in order to establish her prima facie case at trial, plaintiff would need to further testify that the interest

Page 13 - OPINION AND ORDER

rates offered by defendant constituted a material breach because
such rates were inconsistent with the prevailing market rates.
However, such testimony would not be based on the perception of
the witness, but rather, would be an opinion on how the trier of
fact should resolve the issue.  <u>Fireman's Fund</u>, 106 F.3d at 1468.
Accordingly, such lay testimony "must be excluded under Federal
Rules of Evidence 701(a)."  <u>Kinyon</u>, 2004 WL 2303595 at *6.

### b.  Mr. Davidson's Affidavit

Plaintiff does, however, offer additional evidence to
support her contention that defendant materially breached the
contract.  Plaintiff seeks to introduce the lay testimony of
Steven Davidson, a former branch manager and customer of
defendant.  Mr. Davidson states in his affidavit that:

> [b]ack around March or April of 2009, our branch had two
> all-in-one jumbo loans in process . . . One was a customer
> of mine, and the other was my own personal loan.  One day
> *around April of 2009*, corporate called or emailed every
> branch . . . that had [this type of loan] in process.  We
> were told that the program . . . was going away and that we
> needed to lock in everyone's rate THAT DAY . . . The rates
> that they were quoting to us, were abnormally high, the rate
> I was offered was 8.5% and my customers rate offered was
> 9.625% . . . *Rates at that time for this type of product
> were around 5.5%, I remember specifically because my own
> loan was part of the calamity*.

Ex. B to Plf.'s Response (emphasis added).

Defendant makes an evidentiary objection to this affidavit
pursuant to LR 56(b).  Specifically, defendant objects on the
grounds that 1) "it consists of inadmissible hearsay testimony
statements that are vague, conclusory, beyond the realm of a fact

witness, and which are contradicted and belied by information
contained in Davidson's own publicly recorded loan documents";
and 2) the affidavit is irrelevant.  Def.'s Reply at pg. 6.

### 1.  Inadmissible as Lay or Expert Testimony

As discussed above, lay testimony is generally admissible if
it is rationally based on the perception of the witness and is
helpful in understanding a fact in issue.  However, because a lay
witness is barred from offering opinions that would require
specialized knowledge, "the mere percipience of a witness to the
facts on which he wishes to tender an opinion does not trump Fed.
R. Evid. 702."  United States v. Figueroa-Lopez, 125 F.3d 1241,
1245 (9th Cir. 1997).  Accordingly, where the lay opinion is not
rationally based on the perceptions of the witness without the
witness's specialized knowledge, the witness must first be
qualified as an expert before giving the opinion.  Id.

Here, it is clear from the affidavit that plaintiff retained
Mr. Davidson because of his specialized knowledge of the mortgage
and banking industry, as well as for his personal knowledge of
the events in question.  Regardless, I find that the testimony
offered by Mr. Davidson falls outside the ambit of that admitted
under Rule 701.  I may be more inclined to construe this
affidavit as an observation by a witness with personal knowledge
of the events in question had Mr. Davidson actually identified
the bank document or source of information that led him to the
conclusion that "[r]ates at that time for this type of product

Page 15 - OPINION AND ORDER

were around 5.5%." However, this Court cannot conclude, without more, that there is a logical connection between the perception and the opinion. Accordingly, I construe this testimony as one based upon specialized knowledge of the mortgage industry. Thus, such testimony requires expert knowledge, the admissibility of which is governed by Rule 702.

Based on the record, however, this Court cannot conclude whether Mr. Davidson is an expert and, thus, cannot admit the testimony under Rule 702. Regardless, even if Mr. Davidson was qualified as an expert, his affidavit offers only legal conclusions and does not provide a foundation, factual or otherwise, upon which this Court can evaluate those conclusions. Specifically, it is unclear what facts or data his conclusion regarding the prevailing market rate at the time in question is based upon; without more information, Mr. Davidson's statement appears to be conjecture. See Fed. R. Evid. 702(1); General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (district court is not required to admit expert opinion evidence when there exists an analytical gap between the data and the opinion proffered). Therefore, Mr. Davidson's testimony is inadmissible even as expert testimony.

Moreover, even if Mr. Davidson's testimony was admissible as lay testimony, the majority of it is irrelevant and therefore inadmissible. Conclusory statements by another borrower regarding the rates that may have been offered have absolutely no

bearing on the rates actually offered to plaintiff.  In his affidavit, Mr. Davidson testified that he was required to "lock in everyone's rate THAT DAY" at 9.625%.  However, it is undisputed that defendant offered plaintiff interest rates of 6.625% and 7.625%.  Thus, Mr. Davidson's testimony as to the rate offered to other borrowers is not supported by the facts here.  I find no evidence that plaintiff was mandated to "lock in" her rate, instead plaintiff was able to successfully negotiate lower rates over a period of time. Accordingly, Davidson's testimony does not make any relevant fact in this case more or less probable, and, as such, must be excluded.  Fed. R. Evid. 401, 402; see also Boyd v. City and County of San Francisco, 576 F.3d 938, 944 (9th Cir. 2009).

### 2. Inadmissable as a "Sham" Affidavit

Finally, Mr. Davidson's affidavit is blatantly contradicted by the public record.  Therefore, even if his testimony was admissible as either lay or expert testimony, it would still be inadmissible because it is a "sham."

In the Ninth Circuit, the "sham affidavit rule" prevents a party from creating an issue of material fact by introducing an affidavit that contradicts prior deposition testimony.  Kennedy v. Allied Mutual Insurance Co., 952 F.2d 262 (9th Cir. 1991). Before applying the sham affidavit rule, however, "the district court must make a factual determination that the contradiction was actually a 'sham.'"  Id. at 267.

This Court is unaware of, and defendant has not cited to, any cases that have applied the sham affidavit rule where the party's affidavit is contradicted by public record rather than prior deposition testimony. However, extending the rule in this case would serve the same purpose, namely, to prevent plaintiff from creating a factual dispute for the sole purpose of arguing that summary judgment is inappropriate until the dispute is settled.

Here, Mr. Davidson testified that he remembered the alleged prevailing market rate in 2009 "specifically because my own loan was part of the calamity." However, as evidenced in the publicly filed records maintained by the Deschutes County Clerk, which this Court took judicial notice of in Section I, Mr. Davidson's loan was converted into permanent financing in December 2007. Plaintiff did not even apply for a loan from defendant until 2008, and further, was not required to convert her loan until January 2009. Therefore, Mr. Davidson's affidavit, at least in regard to the time frame testified to and the interest rates during that time, are not relevant or accurate.

Further, defendant asserts that its employment records reflect that Mr. Davidson was only employed through June 2007. As such, it would be factually impossible for Mr. Davidson to have had personal knowledge of defendant's banking practices and interest rates during the time frame at issue in this case. Accordingly, I find that any statements therein regarding what

the interest rates were "at that time for this type of product"
would be inadmissible to establish the prevailing market rates in
2009.

Nevertheless, plaintiff asserts that potential falsehoods in
an affidavit does not render it inadmissible, citing to <u>Malmquist</u>
<u>v. OMS National</u>. <u>See</u> <u>Malmquist v. OMS Nat. Ins. Co.</u>, 2010 WL
5621358, *6 (D.Or. Dec. 28, 2010). <u>Malmquist</u> merely held that an
affidavit may not be stricken on the basis of a party's bare
assertion that it is false, without first specifically
identifying reasons why the statements therein would be
inadmissible. <u>Id.</u> However, the <u>Malmquist</u> court did disregard
portions of an affidavit that were unambiguously untrue. <u>Id.</u> As
such, I find that Mr. Davidson's affidavit is a "sham" and
therefore disregard those portions that are patently false. <u>Id.</u>;
<u>see</u> <u>also</u> <u>Kennedy</u>, 952 F.2d at 267.

Thus, even though plaintiff attempts to create an issue of
fact regarding Mr. Davidson's veracity, that is a collateral
issue which has no bearing on the material issue of whether
defendant violated the contract terms. Accordingly, I find
plaintiff has failed to proffer any evidence that the rates
offered to convert her loan into permanent financing were
anything but consistent with the prevailing market rates.
Therefore, as a matter of law, I find no genuine issue as to any
material fact, and, as such, defendant's motion for summary

judgment is granted in regard to plaintiff's breach of contract
claim.

III.   Conversion

Plaintiff also asserts that defendant converted her "home
for its own use by wrongfully evicting [p]laintiff in violation
of the contract and selling it at foreclosure auction." Plf.'s
Response at pg. 7. Conversion is "an intentional exercise of
dominion and control over a chattel which so seriously interferes
with the right of another to control it that the actor may justly
be required to pay the other the full value of the chattel."
Morrow v. First Interstate Bank, N.A., 118 Or. App. 164, 171, 847
P.2d 411 (1993). Conversely, when property is lawfully taken,
there is no conversion. Outdoor Media Dimensions Inc. v. Oregon,
150 Or. App. 106, 112, 945 P.2d 614, 618 (1997). Accordingly,
when a bank conducts a lawful foreclosure, no action for
conversion will lie. Phoenix Leasing, Inc. v. Venture Funding,
Ltd.,1994 WL 449036, *4 (N.D.Cal. Aug. 12, 1994).

As discussed in Section II, plaintiff failed to establish
that defendant materially breached the parties' contracts.
Therefore, plaintiff is not entitled to have the contract
rescinded. Wasserburger, 267 Or. at 82. As such, the terms of
the contract bound the parties' during the relevant time period.

Under the contract's explicit terms, plaintiff was required
to execute a modification agreement at the end of the
construction period. Plaintiff's failure to execute such an

agreement constituted default under the loan contract. As such, defendant was entitled to foreclose upon the property. Further, plaintiff fails to allege or present any evidence whatsoever that defendant failed to follow the law in proceeding with the non-judicial foreclosure.

Thus, because there is no cause of action for conversion where a foreclosure is conducted lawfully, plaintiff's conversion claim fails as a matter of law. Outdoor Media, 150 Or. App. at 112. Therefore, defendant's motion for summary judgment is granted in regard to plaintiff's conversion claim.

### CONCLUSION

Defendant's motion for summary judgment (doc. 41) is GRANTED and plaintiff's claims are DISMISSED. Accordingly, defendant's request for oral argument is DENIED as unnecessary. Assuming that defendant's counterclaim is now moot, the court is prepared to dismiss this case in its entirety. Defendant should contact the court within ten (10) days of this signed Opinion with confirmation of the case status.

IT IS SO ORDERED.

Dated this 27th day of July 2011.

_____
Ann Aiken
United States District Judge